Opinion filed January 29, 2010











 
 
  
 
 







 
 
  
 
 




Opinion filed January 29,
2010

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-09-00179-CR 

                                                     __________

 

                                       STATE
OF TEXAS, Appellant

 

                                                             V.

 

                                   
RAYMOND CASTRELLON, Appellee

 



 

                                             On
Appeal from 385th District Court 

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CR-35692 

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
State appeals from the trial court=s
ruling on Raymond Castrellon=s
motion to suppress.  The trial court suppressed Castrellon=s statements made to
Officer Fernando Carrasco.  We affirm. 

Background
Facts 








Castrellon
was in the Midland County Detention Center serving time for revocation of
probation.  Castrellon applied to serve his assessed jail confinement in the
Midland County Jail Work Release Program.  The program required him to perform
work for the county under the supervision of the Community Work Program
Supervisor and to be present for work from 7:30 a.m. to 1:30 p.m.  Castrellon=s application confirmed
that he understood that violating any terms or conditions of the program could
result in the trial court revoking his participation in the program.  Potential
violations included failing to report to the program, departing from the
program without permission, and failing to perform the work assigned.

On
January 28, 2009, Castrellon was working in the work release program under
Officer Carrasco=s
supervision.  That day, the work crew had lunch in the work release program
building.  Officer Carrasco allowed Castrellon and two other inmates to go to
Castrellon=s pickup
for a smoke break.  Officer Carrasco testified that he was alerted that
something was going on outside, and he went outside to check on the situation. 
He testified that, as he approached Castrellon=s
pickup, he could smell what he believed to be marihuana coming from the
vehicle.  Officer Carrasco testified that he asked what was going on and that
one inmate replied that they were listening to the radio and smoking
cigarettes.  He ordered Castrellon and the other inmates to get out of the
pickup and to go inside the work release program building.  Castrellon entered
the work release program building and sat on a bench.  Officer Carrasco
testified that he asked Castrellon what was going on in the pickup.  His
testimony was as follows:

A.
He sat down on the bench that we provide for them.  He sat down, and I asked
him.  I said, AWell,
what was going on?@

 

Q.
And did he reply?

 

A.
What he did, he sat there, and he shook his head.  He said, you know B if I recall, he told me he
wasn=t going to go get
in trouble for anyone and that, you know, he just B AI=m not going to get in
trouble for anyone,@
he said.

 

I
told him, AWell, what
was going on?@  I
said, AIf you don=t tell me@ B I said, AYou
know, I know what I smelt.  Tell me what=s
going on, or, you know, we can place you in jail.@

 








Officer Carrasco
testified that Castrellon told him, AI=m not going to go to jail
for those fools.@ 
Officer Carrasco further testified that Castrellon said, ADope was being smoked in
the pickup truck and that Inmate Pruitt was the one that had it on his person.@[1] 
Officer Carrasco=s
interview with Castrellon lasted about five minutes.  After Officer Carrasco
finished talking with Castrellon, he questioned the other two inmates. 
Castrellon walked outside and paced the length of the building. Officer
Carrasco did not advise Castrellon of his Miranda[2]
rights, and he did not audiotape or videotape the interview.

Castrellon
was indicted for possession of a dangerous drug, namely marihuana, in a
correctional facility.  Castrellon filed a motion to suppress his statements
made to Officer Carrasco.  After a hearing, the trial court suppressed the
statements, stating in its conclusions of law that:

(1)
       Castrellon was in custody when Officer Carrasco conducted his
investigation;

 

(2)
       Castrellon=s
rights against self-incrimination were violated under Miranda and Tex. Code Crim. Proc. Ann. art. 38.22, ' 3 (Vernon 2005); and 

 

(3)        Castrellon=s
statements were not voluntary because they were coerced by Officer Carrasco=s threat to take Castrellon
to jail if he did not tell Officer Carrasco what was going on.

State=s
Right to Appeal

The
State asserts that it has the right to appeal the trial court=s ruling on Castrellon=s motion to suppress.  The
State has limited rights of appeal in criminal cases.  Tex. Code Crim. Proc. Ann. art.  44.01 (Vernon Supp. 2009).  The State is entitled to appeal
an order of a court in a criminal case if the order grants a motion to suppress
evidence, if jeopardy has not attached, and if the prosecutor certifies to the
trial court that the appeal is not taken for the purpose of delay and that the
suppressed evidence is of substantial importance to the case.  Article
44.01(a)(5).  The State asserts in its brief that Castrellon=s suppressed statement was
evidence that was substantially important to its case.  Castrellon does not
challenge the State=s
right to appeal.  We, therefore, find that the State has a right to appeal this
case and will discuss its issues below. 

                                                                 Issues
on Appeal








In
its second and third issues, the State asserts that the trial court erred by
finding that Castrellon was in custody and undergoing an interrogation and
thereby requiring compliance with Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon 2005) and Miranda, 384
U.S. 436.  The State also asserts that the trial court erred by finding that
Castrellon was threatened or coerced into making his statements to Officer
Carrasco.  

                                                              Standard
of Review

In
reviewing a trial court=s
ruling on a motion to suppress, appellate courts must give great deference to
the trial court=s
findings of historical facts as long as the record supports the findings.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  If the trial court=s ruling is reasonably
supported by the record and is correct on any theory of law applicable to the
case, the reviewing court will sustain the trial court=s findings.  Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996).  We also must afford great deference to
the trial court=s
rulings on mixed questions of law and fact if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  Appellate courts, however, conduct de novo review on Amixed questions of law and
fact@ not falling
within the previous category.  Id.  A question Aturns@
on an evaluation of credibility and demeanor when the testimony of one or more
witnesses, if believed, is always enough to add up to what is needed to decide
the substantive issue.  Loserth v. State, 963 S.W.2d 770, 773 (Tex.
Crim. App. 1998). 

Voluntariness
of Statement  








Once
an accused presents evidence that raises the issue of voluntariness, the State
must prove, by a preponderance of the evidence, that the statement was
voluntarily made. State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App.
1999).  A statement is involuntary if there was official, coercive conduct of
such a nature that any statement obtained thereby was unlikely to have been the
product of an essentially free and unconstrained choice by its maker.  Alvarado
v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  To determine if the
confession was voluntary, the reviewing court must examine the totality of the
circumstances surrounding the acquisition of the statement to determine whether
it was given voluntarily.  Id.  Without coercive police conduct causally
related to the confession, there is no basis for concluding that any state
actor has deprived a criminal defendant of due process of law.  Colorado v.
Connelly, 479 U.S. 157, 164 (1986).  A court should examine the
circumstances surrounding the confession, including the conduct of the law
enforcement officials and the capacity of the suspect to resist pressure to
confess.  United States v. Casal, 915 F.2d 1225, 1228 (8th Cir. 1990).  
A confession cannot be used where the prisoner has been influenced by any
threat because the law cannot measure the force of the influence used.  Martinez v. 
State, 127 S.W.3d 792, 796 (Tex. Crim. App. 2004) (citing Bram v. United
States, 168 U.S. 532, 542-43 (1897)).  The ultimate question to determine
voluntariness is Awhether
the suspect=s will was
overborne@ by the
conduct of the state actor.  Creager v. State, 952 S.W.2d 852, 856 (Tex.
Crim. App. 1997).  Some relevant circumstances include the length of the
detention and interrogation, whether the defendant was permitted access to his
family or attorney, and the presence or absence of physical brutality.  Gomes
v. State, 9 S.W.3d 373, 377 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d)
(citing Armstrong v. State, 718 S.W.2d 686 (Tex. Crim. App. 1985), overruled
on other grounds by Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App.
1998)).  A defendant=s
characteristics and status, as well as the conduct of the police, are also
important concerns.  Haynes v. Washington, 373 U.S. 503, 517 (1963).  

The
State argues that Castrellon=s
statements were voluntary because he was only interviewed for five minutes,
that Officer Carrasco=s
demeanor was polite and respectful, that Officer Carrasco did not point a gun
at Castrellon or handcuff him, and that Castrellon did not ask to speak to a
lawyer or ask to visit with family members.  The State also argues that
Castrellon signed an application to participate in the work release program
whereby he agreed to follow the rules of the program.  The State, however,
fails to address Officer Carrasco=s
threat to put Castrellon in jail.  Courts have held that a defendant=s statement was coerced by
a verbal threat alone and not physical brutality.  See Lynumn v.
Illinois, 372 U.S. 528, 531 (1963) (confession involuntary when police told
suspect confession would produce help and recommendation of leniency, but
denial would result in loss of welfare payments and custody of children); Rogers
v. Richmond, 365 U.S. 534, 535 (1961) (confession involuntary when police
told suspect they would take his wife into custody).








Because
of Castrellon=s status
as an inmate participating in the work release program and the conduct of
Officer Carrasco, we conclude that the trial court did not abuse its discretion
by finding that Castrellon was coerced into making the statements to Officer
Carrasco.  Even though Officer Carrasco did not use a gun or handcuffs and
spoke in a polite tone, Castrellon was threatened with jail if he did not give
a statement.  Castrellon testified that he did not think that he could leave
until he told Officer Carrasco what happened outside.  He further testified
that he believed that, if he did not talk to Officer Carrasco, he would be put
in jail.  Castrellon knew that Officer Carrasco possessed some authority over
him, and he believed that he could go to jail if he did not talk to Officer
Carrasco.  Castrellon=s
statement B AI=m not going to jail for those fools@ B indicated that the only reason he told
Officer Carrasco what was going on was that he did not want to go to jail.  The
evidence supports a conclusion that Castrellon=s
will was overborne by Officer Carrasco=s
threat to take him to jail. 

Further,
the State argues that Castrellon knew that he could go to jail if he did not
follow the rules of the work release program because he signed the application
to do the work release program.  However, the application did not specify that
answering any questions asked by the police or the officer in charge was one of
the rules of the program or that, by applying for the work release program, he
was waiving his right to remain silent.  We decline to hold that Castrellon=s  constitutional rights
against self-incrimination were limited as a result of his participation in the
work release program.  

The
evidence that we have outlined above, viewed in the light most favorable to the
trial court=s ruling,
supports the trial court=s
finding that Castrellon=s 
statements were not voluntary.  The trial court did not err when it granted Castrellon=s motion to suppress.  We
overrule the State=s
third issue on appeal.  Because the trial court did not abuse its discretion in
concluding that the statements were not voluntarily given, the statements were
properly suppressed for that reason, and we need not address the State=s other two issues.  

Conclusion

We
affirm the trial court=s
order. 

 

 

RICK STRANGE

JUSTICE

 

January 29, 2010

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J. 

 









[1]We note that Castrellon=s
statements were not inculpatory as he did not admit to smoking marihuana or
having marihuana in his possession. 





[2]Miranda v. Arizona, 384 U.S. 436 (1966).